2013-1638

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

IN RE: BELLANDI

PETITION FOR REVIEW FROM THE UNITED STATES PATENT OFFICE'S

PATENT TRIAL AND APPEAL BOARD DECISION ON APPEAL 2011-

004851

CORRECTED BRIEF OF APPELLANT ALICIA BELLANDI

EDWARD P. RYAN
TUTUNJIAN & BITETTO, P.C.
425 Broadhollow Rd., Suite 302
Melville, NY 11747
(631) 844-0080

Attorney for Appellant

November 12, 2013

## <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel for Appellant certifies the following:

1.      The full name of the party I represent is Alicia Bellandi.

2.      The name of the real party in interest that I represent is Alicia Bellandi.

3.      There are no parent corporations or publicly held companies that hold more than ten percent of my the party I represent.

4.      The names of all law firms and the partners or associates that appeared for the party I represent in the trial court or agency or are expected to appear in this court are: Edward P. Ryan and John G. Tutunjian, Tutunjian & Bitetto, P.C.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...............................................................2

TABLE OF CONTENTS...........................................................................3

TABLE OF AUTHORITIES ....................................................................6

STATEMENT OF RELATED CASES ....................................................7

STATEMENT OF JURISDICTION........................................................8

STATEMENT OF THE ISSUES..............................................................9

STATEMENT OF THE CASE................................................................10

STATEMENT OF FACTS .......................................................................11

   A. Procedural history............................................................................11

   B. The present invention .....................................................................11

   C. The cited art .....................................................................................12

     1. U.S. Patent Publication No. 2009/0062076 A1 to Curley (hereinafter "Curley")....................................................................13

     2. U.S. Patent No. 7,131,936 to Schlosser (hereinafter "Schlosser"). ............14

     3. U.S. Patent Publication No. 2007/0032353 A1 to Wilkens et al. (hereinafter "Wilkins")........................................................14

4.   U.S. Patent No. 7,486,197 to Frazier et al. (hereinafter "Frazier")..............15

SUMMARY OF ARGUMENT ...............................................................................17

STANDARDS OF REVIEW .................................................................................19

ARGUMENT ........................................................................................................20

A.   The Board erred in finding claims 1-2, 4, and 9-11 to be obvious over

Curley...............................................................................................................20

1.   Curley fails to teach or suggest a plurality of sequentially aligned sections

for receiving one of a foot or hand of a user ......................................................20

2.   Curley fails to teach or suggest at least two adjacent center sections being

designated for exclusively receiving hands.......................................................27

3.   Curley fails to teach or suggest at least one indicator in communication

with each of said plurality of sequentially aligned sections and responsive to a

user's hand and foot placement onto a respective section while performing a

gymnastic movement .......................................................................................31

B.   The Board erred in finding claims 3, 12, 14, 18–20, and 22 to be obvious

over Curley in view of Schlosser......................................................................33

1.   Curley fails to teach or suggest a plurality of linearly and sequentially

arranged sections. ............................................................................................34

2.   Schlosser cannot cure the deficiencies of Curley set forth in parts A1, A2, and A3 above ....................................................................................................35

C.   The Board erred in finding claims 5–7 and 13 to be obvious over Curley in view of Wilkins.....................................................................................................36

    1.   Wilkins cannot cure the deficiencies of Curley set forth above. ................36

D.   The Board erred in finding claims 15 and 21 to be obvious over Curley in view of Schlosser and further in view of Wilkins .................................................37

    1.   Schlosser and Wilkins cannot cure the deficiencies of Curley set forth above .....................................................................................................37

E.   The Board erred in finding claim 8 to be obvious over Curley in view of Frazier. ...........................................................................................................38

    1.   Frazier cannot cure the deficiencies of Curley set forth above................38

CONCLUSION ....................................................................................................39

# TABLE OF AUTHORITIES

**Cases**

*Flo Healthcare Solutions, LLC* v. *Kappos*,
    697 F.3d 1367 (Fed. Cir. 2012) ....................................................19

*In re Abbott Diabetes Care, Inc.*,
    696 F.3d 1142 (Fed. Cir. 2012) ....................................................19

*In re Am. Acad. of Sci. Tech. Ctr.*,
    367 F.3d 1359 (Fed. Cir. 2005)) ...................................................22

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2000) ....................................................33

*W.L. Gore & Associates, Inc. v. Garlock, Inc.*,
    721 F.2d 1540 (Fed. Cir. 1983) ....................................................29


**Statutes and Rules**

28 U.S.C. § 1295 ..............................................................................8

35 U.S.C. § 103 ......................................................................... 9-12

35 U.S.C. § 141 .............................................................................10


**Other**

*WordNet,* Definition of "sequential"
    http://wordnetweb.princeton.edu/perl/webwn?s=sequential .........................21

MPEP § 2111 ...................................................................................33

MPEP § 2141.01 ..............................................................................29

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, appellants provide as follows:

There have been no previous appeals in this case before this or any other appellate Court.  Appellants are aware of no other case that will be directly affected by the Court's decision in this case.

## <u>STATEMENT OF JURISDICTION</u>

This appeal concerns a final decision made by the Patent Trial and Appeal

Board upholding the rejection of a patent application. As such, this Court has

jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

Whether the Board erred in finding that claims 1–2, 4, and 9–11 are unpatentable under 35 U.S.C. § 103(a) as being obvious over U.S. Patent Publication No. 2009/0062076 to Curley.

Whether the Board erred in finding that claims 3, 12, 14, 18–20, and 22 are unpatentable under 35 U.S.C. § 103(a) as being obvious over U.S. Patent Publication No. 2009/0062076 to Curley in view of U.S. Patent No. 7,131,936 to Schlosser.

Whether the Board erred in finding that claims 5–7 and 13 are unpatentable under 35 U.S.C. § 103(a) as being obvious over U.S. Patent Publication No. 2009/0062076 to Curley in view of U.S. Patent Publication No. 2007/0032353 to Wilkens et al.

Whether the Board erred in finding that claims 15 and 21 are unpatentable under 35 U.S.C. § 103(a) as being obvious over U.S. Patent Publication No. 2009/0062076 to Curley in view of U.S. Patent No. 7,131,936 to Schlosser and further in view of U.S. Patent Publication No. 2007/0032353 to Wilkens et al.

Whether the Board erred in finding that claim 8 is unpatentable under 35 U.S.C. § 103(a) as being obvious over U.S. Patent Publication No. 2009/0062076 to Curley in view of U.S. Patent No. 77,486,197 to Frazier et al.

## **STATEMENT OF THE CASE**

This is an appeal under 35 U.S.C. § 141 from the decision of June 3, 2013 of the Patent Trial and Appeal Board, Appeal No. 2011-004851. Said decision affirmed the Examiner's final office action dated May 13, 2010, rejecting claims 1–15 and 18–22 of Application No. 12/173,586 under 35 U.S.C. § 103(a).

The Board, in adopting the Examiner's arguments, incorrectly construed the scope of the claims. Furthermore, the Board made findings of fact which are erroneous in the face of substantial evidence drawn from the cited references themselves. The Board also made assertions of obviousness that are unsupported by the cited art. Applicants argued on appeal and maintain herein that the Examiner and the Board erred in finding claims 1–15 and 18–22 to be obvious.

## STATEMENT OF FACTS

**A.** **Procedural history**

Application No. 12/173,586 was filed on July 15, 2008. A final rejection was issued by the Examiner on May 13, 2010. Appellants filed an appeal brief to the Patent Trial and Appeal Board (then the Board of Patent Appeals and Interferences) on August 24, 2010. The Patent Trial and Appeal Board issued a final decision on June 3, 2010, affirming the Examiner's rejections based on 35 U.S.C. § 103(a).

**B.** **The present invention**

The application concerns a gymnastic training mat that is configured to aid in training a user to perform a gymnastic movement—specifically, a cartwheel. A representative figure is shown below and is drawn from FIG. 7 of the present specification:



To successfully complete the maneuver, the user places their hands and feet on specified sections of the mat in order. In this embodiment, the mat is configured to provide feedback to the user regarding hand/foot positioning and timing. Toward this end, the present claims recite a plurality of sequentially aligned sections for receiving one of a hand or foot. The claims go on to provide specific details for such hand and foot placement, going so far as to provide specific spatial relationships between left and right hands and their positions on the mat.

## C.    The cited art

Each of the pending claims is rejected under 35 U.S.C. § 103(a) as being obvious over one or more of the following references.

1.    **U.S. Patent Publication No. 2009/0062076 A1 to Curley**

   **(hereinafter "Curley").**

Curley is directed to a "yoga mat with intuitive tactile feedback for visually impaired." Curley, Title.  In further detail, Curley discloses the following in the Abstract:

> The invention includes an exercise mat that provides intuitive tactile feedback allowing a user to determine body placement using the sense of touch. The invention enables visually impaired users to determine location and/or direction on the mat. The invention includes devices to assist a user in correct foot and hand placements during a yoga posture sequence, an exercise program, a dance routine, and so forth. Tactile markers for hand and foot placement enable discerning a reference marker as either intended for hand or foot, right side or left side, and forward or backward. The invention makes yoga more accessible to the visually impaired and enables a user to participate in mainstream yoga communities. The invention can be used for the practice of yoga in a class setting in schools for the blind, in public or private studios, or at home. The mat can be used in a yoga class to follow instructions with more ease and independence. The pliable nature of the mat allows it to be easily portable to schools, studios, and storage at home.

The Examiner relies on Curley to show the majority of the claimed features of the present invention. The mat shown in the Curley reference is designed with the specific goal of providing tactile feedback for the vision impaired in performing yoga maneuvers. However, while Curley aids in "a yoga posture sequence, an exercise program, a dance routine, and so forth," it will be shown below that Curley fails to disclose or suggest the substantive structural features set

out in the present claims that make the present invention particularly well suited to learning how to perform a cartwheel.

### 2.     U.S. Patent No. 7,131,936 to Schlosser (hereinafter "Schlosser").

Schlosser is directed to an "apparatus for training a body part of a person and method for using the same." Schlosser, Title. In further detail, Schlosser discloses the following in the Abstract:

> Apparatus for training a body part, such as for example the feet or head, of a person is shown. The apparatus structure is configured to receive and support the body part. The structure includes a body part-supporting member defining a movement path of a selected distance to be traversed by the body part during training. At least one sensor is positioned along the movement path representing a selected distance to be traversed by the body part during trained. The sensor is physically contacted by and is actuated by the body part. A signal control circuit is responsive to actuation of the sensor for generating a feedback signal which is communicated to such person to verify that such person's body part has traversed the selected distance. A method for training a body part of a person including a head, leg or arm is also shown.

The Examiner relies on Schlosser to address features relating to the specific indicators used to provide feedback to the user. As will be shown below, Schlosser cannot cure the deficiencies of Curley.

### 3.     U.S. Patent Publication No. 2007/0032353 A1 to Wilkens et al.

### (hereinafter "Wilkins").

Wilkens is directed to an "exercise device with a user-defined exercise

mode" (Wilkens, Title). In further detail, Wilkens discloses the following in his

Abstract:

> An exercise device including a support surface and at least two
> position sensors arranged along a sensing plane relative to the
> support surface, with the position sensors adapted to detect a
> presence of a user along the sensing plane. The exercise device
> further includes a controller in communication with the
> position sensors to determine a position of the user relative to
> the sensing plane. The controller has a closed loop feedback
> mode adapted to process at least one input parameter provided
> by the user, and to further measure a performance criteria of
> the user related to the input parameter and to provide feedback
> to the user indicative of a measurement of the performance
> criteria.

The Examiner relies on Wilkins to address features relating to the sensors

used to detect hand and foot placement. As will be shown below, Wilkins cannot

cure the deficiencies of Curley.

### 4.    U.S. Patent No. 7,486,197 to Frazier et al. (hereinafter "Frazier").

Frazier is directed to a "blanket with an audio device." Frazier, Title. In

further detail, Frazier discloses the following in the Abstract:

> A blanket with audio device, which comprises a removable
> audio device located in the thickness of the blanket under a
> flap, is disclosed. The flap is both pliable and transparent. The
> audio device is waterproof and replaceable. The audio device
> is offered in more than one embodiment, with the preferred
> embodiment featuring recording, playback, erasure, on/off,
> voice activated control, and elevated Braille letters for the
> visually impaired. The audio device is, therefore, visually,
> manually, audibly, and palpably accessed.

The Examiner relies on Frazier to address features relating to the integration of speakers into the mat sections. As will be shown below, Frazier cannot cure the deficiencies of Curley.

## SUMMARY OF ARGUMENT

The present claims recite features directed to a specific arrangement of structural features in a gymnastics training mat. In particular, the claims provide a plurality of sequentially aligned sections, where at least two adjacent center sections are designed to exclusively receive hands. The cited art, and the Curley reference in particular, fail to address these structural features. The Examiner admits as much, but simply asserts that it would have been obvious to arrive at the specific arrangement set forth in the present claims. The Board erroneously adopted the Examiner's reasoning on every point.

As a basis for this position, the Examiner cited a portion of Curley which states that the positions of Curley's hand and foot placements can be varied. From this slender reed the Examiner builds the conclusion that any arbitrary arrangement of sections would be possible and, furthermore, that the specific embodiment of the present claims would have been obvious. As will be described below, one could not vary Curley's embodiments to arrive at the present embodiment and, furthermore, those having ordinary skill in the art would not have found any hint of the present embodiments in the reference.

Even assuming, *arguendo*, that the device shown in the Curley reference could be manipulated to meet the present embodiments, that would not be sufficient to establish the obviousness of doing so. It is not enough merely to show

17

that it would be possible to replicate or perform an invention using tools provided in the prior art. Given the benefit of hindsight, practically every invention would be obvious under such a standard. Instead, an Examiner's determination of obvious must be grounded in the concrete teachings of the art, and Examiners may not substitute their own judgment for such teachings.

Rather than seek out references which do teach the structures of the present claims, the Examiner has used a broad assertion of obviousness to spackle over the cracks in the rejection. As will be shown below, the cited art does not teach and does not suggest the claimed embodiments of the present invention.

## STANDARDS OF REVIEW

There are three applicable standards of review that apply to the present issues. First, the Board's construction of the scope of the claim language is a matter that this Court has variably reviewed under a standard of "reasonableness" and under a *de novo* standard. *See Flo Healthcare Solutions, LLC* v. *Kappos*, 697 F.3d 1367, 1376 (Fed. Cir. 2012) (Plager, J. concurring). Second, the Board's factual findings regarding the concrete teachings of the art are reviewed for substantial evidence. *See In re Abbott Diabetes Care, Inc.*, 696 F.3d 1142, 1148 (Fed. Cir. 2012). Third, the Board's legal conclusions regarding whether those teachings render the present claim language obvious is a matter for *de novo* review. *See Id.*

## **ARGUMENT**

**A.      The Board erred in finding claims 1-2, 4, and 9-11 to be obvious over Curley.**

Claims 2, 4, and 9-11 depend from claim 1 and therefore include all of the elements of claim 1. As such, claims 1-2, 4, and 9-11 recite the following features:

> a plurality of sequentially aligned sections each delineated for receiving one of a hand or foot of a user, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand.

### **1.      Curley fails to teach or suggest a plurality of sequentially aligned sections for receiving one of a foot or hand of a user**

The Curley reference discloses a rectangular mat in its FIG. 1, reproduced below. As shown, Curley's mat includes hand placement and foot placement stations.  The hand placement sections (i.e., items 120 and 125) are located on the outside of the mat.  The foot placement stations (i.e., items 160 and 165) are located inside the hand placement stations, but they are not aligned with the hand placement stations.  There is a gap between the foot placement stations.  A raised center line (i.e., item 180) is located in the center of the gap, separating the left and right foot/hand sections.

The first issue is the Board's interpretation of "sequential" sections. Toward this end, Appellants provided the definition, "in regular succession without gaps." *See* WordNet, http://wordnetweb.princeton.edu/perl/webwn?s=sequential. The Examiner disagreed with this definition, asserting that the dictionary definition of "sequence" is, "the following of one thing after another."



Curley, FIG. 1

Regarding this point, the Board stated, "Claims are given their broadest reasonable interpretation consistent with the specification, reading claim language in light of the specification as it would be interpreted by one of ordinary skill in the art." (citing *In re Am. Acad. of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2005)). Appellants do not dispute this characterization of the law, but must take issue with the Board's conclusion. Because the specification does not expressly define "sequential," "aligned," or "adjacent," the Board adopted the Examiner's proposed definition and held that the Examiner correctly identified a plurality of sequentially aligned placement stations in elements 120, 160, 165, and 125.

Appellant maintains that the definition of "sequential" provided above is in line with the broadest reasonable interpretation of the term and request that the Court use that definition in interpreting the present claims. The Board's claim construction is out of line with the *plain meaning* of the term "sequential" and therefore is unreasonable.

Turning to the substantive teachings of Curley, as can be seen below in FIG. 1, Curley uses a set of hand/foot sections having different positions. There is no apparent coordination between any of the sections beyond a left/right symmetry across the dividing center line. Appellants have argued that the arrangement shown in Curley cannot be reasonably interpreted as being "sequential" according to the plain meaning of that term.

Following the claim construction that Appellant provides above, it should be clear that the embodiments of Curley cannot be "sequential" as they are not disclosed as being in succession without gaps. First, there is no apparent succession (i.e., no order) between the sections, and second, there are clearly gaps. In fact, one *could not* place the four sections next to one another without gaps, because the raised center line 180 would intervene.

However, even accepting *arguendo* the Board's interpretation of the word "sequence," Appellants maintain that Curley fails to meet even that definition—the Board's factual findings regarding the Curley reference lack substantial evidence. While the Examiner has shown a set of positions in reasonable proximity to one another, the Examiner and the Board made no attempt to show how one position follows after another. Instead, the Examiner simply showed a version of Curley's FIG. 1 that has lines drawn across it (reproduced below), ostensibly supporting the Examiner's interpretation of the figure in the context of these definitions.



FIG. 1

The Examiner's modified FIG. 1

However, it is clear from the intended usage of Curley's mat (i.e., yoga, where the user will maintain arbitrary poses) that Curley's positions have no particular ordering. There is nothing in the reference that might indicate that one of these positions has any logical sequential relationship, even under the Examiner's definition, because the entire concept of one position "following" another is absent.

In contrast, the present specification describes the sequence of the mat in some detail. For example, the figures show a progressive activation of the sequential sections, with an indication being displayed as a user activates the sections in their correct sequence. This is in accordance with the plain meaning of the term "sequential," which Appellants assert inherently includes some aspect of

*order* in its plain meaning. Those having ordinary skill in the art would recognize, as would any reasonably apt layman, that a collection of unordered objects could hardly be thought of as having a sequence. To use a poetic example, the blades of grass in a field have no order and could not be fairly described as being aligned sequentially—in the same way, Curley's positions are shown without any ordering between them, such that one might follow the other. Curley therefore fails to show or suggest any *sequence*.

The next issue pertains to the Examiner's definition of the term, "align." Appellant pointed out to the Board that the embodiments of Curley do not show alignment of the hand and foot stations 120, 125, 160, and 165, because the foot placement stations 160 and 165 are clearly situated lower than the hand placement stations 120 and 125. Appellant believes that a simple inspection of the figures will show the lack of alignment between the sections.

The Board disagreed, accepting the Examiner's reasoning the definition of the term "align" as, "to adjust according to a line." However, it should be recognized that the Examiner's definition is incomplete, even based on the evidence provided. In particular, the Examiner took *half* of one of the definitions, leaving out the rest. The full definition, provided by the Examiner and attached to the Examiner's Answering Brief as evidence, actually reads, "to arrange in a straight line; adjust according to a line." Appellant would ask that the Court

consider the *full* definition, rather than the cherry-picked phrasing selected by the Examiner and the Board. As shown above, the Examiner drew a line across the hand and foot sections 120, 125, 160, and 165 to show how they have been "adjusted according to a line." This figure is drawn from page 14 of the Examiner's Answering Brief.

However, Appellants respectfully assert that simply drawing a line that touches all of the sections in question does not match any reasonable understanding of the term "aligned." Despite the line the Examiner drew, it should be immediately apparent that these sections are *not* "arrange[d] in a straight line," as required by even the source cited by the Examiner. There is nothing in this figure to indicate any "alignment" between the sections as that term is commonly understood. Thus, even using the Examiner's proposed definition for the sake of argument, the sections in question were clearly not adjusted or placed according to the drawn line or any other. The fact that the sections overlap in one dimension does not serve to contradict this—the figure clearly shows the hands and feet being offset from one another and there is no reasonable linear relationship—they are literally *out of alignment*.

While the Examiner and the Board are entitled to use the broadest reasonable interpretation of the claim language, the reasonableness of that interpretation is nonetheless bounded by the *plain meaning* of the terms. Even

though the Examiner has attempted to cite dictionary definitions, the Examiner's application of those definitions has not applied the actual plain meaning of the terms. Whereas the Examiner's definition for sequence explicitly described one *following* another, the Examiner made no effort to show such an order. Whereas the Examiner's definition for alignment explicitly describes positioning according to some line, the Examiner made no effort to show that the placement of Curley's four sections was in any way based on such a line.

For the above reasons it is believed that the Board's claim construction regarding the terms "sequential" and "aligned" is in error and that, even accepting the Board's claim construction *arguendo*, the Curley reference lacks substantial evidence to support the Board's conclusion that Curley teaches these features. For at least these reasons, it is believed that Curley fails to disclose or suggest a plurality of sequentially aligned sections for receiving one of a foot or hand of a user.

### 2. Curley fails to teach or suggest at least two adjacent center sections being designated for exclusively receiving hands

As stated above, Curley shows a mat having two hand stations 120 and 125. These hand stations are shown as being at the periphery of the mat. Meanwhile, the foot placement stations 160 and 165 are located towards the inside of the mat.

Thus, the hand placement stations are not "adjacent" to each other, and they cannot be considered "center sections."

To address the hands being shown on the periphery of the mat, the Examiner asserted on page 15 of the Answering Brief, "[A]lthough Curley shows the two foot placement stations are in the middle in Fig. 1, Curley still teaches the fact that depending on the type of exercise (such as karate, yoga or dance routines) the placement of the stations can be varied and therefore, since the placement stations are removable and their location/arrangement can be changed, the device is capable of having the two hand placements at the center of the mat." The Board concluded that the Examiner was correct in finding that the feature of adjacent hand sections would be obvious in view of this disclosure.

Although Curley explains in paragraph 50 that the hand and foot placement stations can be varied, there is no suggestion in Curley of the particular configuration of the mat recited in the present claims. The Examiner's position is based solely on what the Examiner believes that those having ordinary skill in the art would have found to be true, without any grounding in the cited art. It is not enough to show that a given embodiment would have been *possible* given the tools of the prior art—the Examiner and the board are limited to only what those having ordinary skill in the art at the time of the invention would have found to be obvious. *See* MPEP § 2141.01(III); *W.L. Gore & Associates, Inc. v. Garlock, Inc.*,

721 F.2d 1540, 220 USPQ 303, 313 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984).

In the present case, the specific arrangement of sections set forth in the claims is set by the goal of providing training for a specific maneuver: the cartwheel. The Examiner and the Board made much of Curley's ability to be used for dance, yoga, and karate, but none of these different practices would have led those having ordinary skill in the art to the sequential, hand-centric arrangement of the present claims. As such, the Board clearly erred in upholding the Examiner's rejection, as the reference provides no actual evidence for finding that placing hand sections in the center would be obvious.

Also at issue is whether it would have been obvious to place the hand sections *adjacent* to one another. Even accepting, *arguendo*, the Examiner's suggestion of moving the hand sections to the center, it is clear that those sections *cannot* be made adjacent. Instead, a raised dividing line 180 runs down the center of the mat. A simple inspection of Curley's FIG. 1 will show that there is no possible adjacent arrangement of hand sections 120 and 125 in the center of the mat, because the dividing line 180 would necessarily intervene.

The Examiner asserted in page 15 of the Answering Brief that the word "adjacent" means "close or neighboring." Again, the Examiner cites only a partial definition. The full definition, as shown by the evidence attached to the Examiner's

Answering Brief, is, "lying near, close, or contiguous; adjoining; neighboring." The Examiner omitted the words "contiguous" and "adjoining" in defining the term "adjacent." Evidently the Examiner was unable to find a source that supported the rejection and was forced to simply pick and choose words out of a single definition to create something appropriate.

Appellants must disagree with the Examiner and the Board in how the term "adjacent" has been interpreted, as the *plain meaning* of the term "adjacent" cannot be satisfied merely by being nearby one another, particularly when some other structure (in this case, the raised center line 180) would intervene. Thus, while the sections 120 and 125 might respectively be placed adjacent to the center line 180, there is no way for them to be simultaneously at the center of the mat and adjacent to one another—they are neither *contiguous* nor *adjoining*.

For at least these reasons, it is believed that Curley fails to disclose or suggest at least two adjacent center sections being designated for exclusively receiving hands.

### 3. Curley fails to teach or suggest at least one indicator in communication with each of said plurality of sequentially aligned sections and responsive to a user's hand and foot placement onto a respective section while performing a gymnastic movement

The mat of the present invention provides feedback to the user. As set forth in the claims, there is at least one indicator in communication with each of the sections of the mat. As shown below, the visual indicators 304, 306, 308, 310, and 312 are provided for respective sections 104, 106, 108, 110, and 112. Additional visual indicators 204, 206, 208, 210, and 212 may be provided for the respective sections as well.



Present specification, FIG. 3

The Board takes the Examiner's position that the present claim language allows for the possibility of a single indicator that is connected to each of the separate mats. This is incorrect. First, the claim language itself clearly refers to at

least one indicator in communication with *each* of the sections. Reading the specification and reviewing the figures, as shown above, it is clear that this is intended to refer to there being one or more indicators connected to each individual section. The claim language further reinforces this point by reciting that the indicators are responsive to hand/foot placement onto a *respective* section. The word "respective" here indicates that each indicator is associated with a particular section, and only contacts on its respective section will cause a response.

Even if there were ambiguity remaining in the claims, reading those claims in the context of the present specification would resolve that ambiguity in the Appellant's favor. While the Examiner is entitled to give claim language its broadest reasonable interpretation, that interpretation must nonetheless be made *in light of the specification. See* MPEP § 2111; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2000). In a situation where grammatical ambiguity may give rise to two different possible claim interpretations, the specification itself should be consulted to provide an explanation.

It is worth emphasizing that Appellants do not ask that the Court import limitations from the specification. Instead, Appellants ask only that the specification be used to inform claim construction. Those having ordinary skill in the art would have the benefit of the present specification in understanding the scope of the claims. Read in light of the specification, the claim language refers to

32

a separate indicator associated with each of the sections and should be interpreted as such. Curley does not read on this feature.

It is therefore believed that Curley fails to disclose or suggest an indicator in communication with each of the plurality of sequentially aligned sections that is responsive to a user's hand and foot placement onto the respective section.

## B. The Board erred in finding claims 3, 12, 14, 18–20, and 22 to be obvious over Curley in view of Schlosser

Claims 3 and 12 depend from claim 1 and therefore include all of the elements of claim 1. As such, claims 3 and 12 recite the following features:

> a plurality of sequentially aligned sections each delineated for receiving one of a hand or foot of a user, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand.

Claims 18–20, and 22 depend from claim 14 and therefore include all of the elements of claim 14. As such, claims 14, 18–20, and 22 recite the following features:

> a plurality of linearly and sequentially arranged sections, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand.

The arguments set forth in sections A1, A2, and A3 above apply with equal force to claims 3, 12, 14, 18–20, and 22. In addition, it should be noted that claims 14, 18–20, and 22 include additional allowable subject matter.

### 1. Curley fails to teach or suggest a plurality of linearly and sequentially arranged sections.

Claim 14 includes a feature that is absent in claim 1, specifying that the sections are *linearly* arranged. As set forth above in the discussion of sequential alignment, Curley fails to show a linear arrangement of sections. The sections are clearly offset from one another, and the line drawn by the Examiner (described in greater detail in part A1 above) is completely unrelated to the actual arrangement of the sections.

The Examiner asserts that the term "linear" is defined to mean "extended or arranged in a line." Appellants agree with this definition, but point out that the sections shown in Curley clearly are *not* arranged in a line. The sections 160 and 165 are offset from a line created by the sections 120 and 125—this is clear from a simple inspection of Curley's FIG. 1. Taking, for example, the center point of each section as representing the position of each section, it is clear that the arrangement of the sections is not linear.

It is therefore believed that Curley fails to disclose or suggest a plurality of linearly and sequentially arranged sections.

**2.  Schlosser cannot cure the deficiencies of Curley set forth in parts A1, A2, and A3 above**

The Schlosser reference is introduced to address features relating to specific kinds of indicator and power supplies. Schlosser does not address the features described above relating to the sequential arrangement of sections and, in particular, does not describe sections for hands at all. As with Curley, Schlosser shows only a single indicator 122 and fails to provide for an indicator for each of the plurality of sections. Finally, Schlosser cannot show a *linear* arrangement of sections, as the user is intended to walk on its surface. As such, the foot positions shown alternate sides in a zig-zag pattern.

It is therefore believed that Curley and/or Schlosser, taken alone or in combination, fail to disclose or suggest all of the features of claims 3, 12, 14, 18–20, and 22.

**C.** **The Board erred in finding claims 5–7 and 13 to be obvious over Curley in view of Wilkins**

Claims 5–7 and 13 depend from claim 1 and therefore include all of the elements of claim 1. As such, claims 3 and 12 recite the following features:

> a plurality of sequentially aligned sections each delineated for receiving one of a hand or foot of a user, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand.

The arguments set forth in sections A1, A2, and A3 above apply with equal force to claims 5–7 and 13.

**1.** **Wilkins cannot cure the deficiencies of Curley set forth above.**

The Wilkins reference is introduced to address features relating to specific kinds of sensors and visual indicators. Wilkins does not address the features described above regarding the relative locations of sections for hands. It is therefore believed that Curley and/or Wilkins, taken alone or in combination, fail to disclose or suggest all of the features of claims 5–7 and 13.

**D.** **The Board erred in finding claims 15 and 21 to be obvious over Curley in view of Schlosser and further in view of Wilkins**

Claims 15 and 21 depend from claim 14 and therefore include all of the elements of claim 1. As such, claims 3 and 12 recite the following features:

> a plurality of linearly and sequentially arranged sections, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand.

The arguments set forth in sections A1, A2, A3, and B1 above apply with equal force to claims 15 and 21.

**1.** **Schlosser and Wilkins cannot cure the deficiencies of Curley set forth above**

For the reasons set forth above in parts B2 and C1, the Schlosser and Wilkins references cannot cure the deficiencies of Curley. It is therefore believed that Curley, Schlosser, and/or Wilkins, taken alone or in any combination, fail to disclose or suggest all of the features of claims 15 and 21.

**E.  The Board erred in finding claim 8 to be obvious over Curley in view of Frazier.**

Claim 8 depends from claim 1 and therefore includes all of the elements of claim 1. As such, claim 8  recites the following features:

> a plurality of linearly and sequentially arranged sections, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand.

The arguments set forth in sections A1, A2, and A3 above apply with equal force to claim 8.


**1.  Frazier cannot cure the deficiencies of Curley set forth above**

The Frazier reference is introduced solely to address features relating to the integration of a speaker into a device—specifically a blanket. Frazier does not address the features described above regarding a linearly sequential arrangement of sections, the relative locations of sections for hands, or the integration of an indicator with each of a set of sections. It is therefore believed that Curley and/or Frazier, taken alone or in combination, fail to disclose or suggest all of the features of claim 8.

## <u>CONCLUSION</u>

For at least the above reasons, the Board erred in finding the present claims

to be obvious over the cited art. As such, the Board's decision should be reversed.

Respectfully submitted,

*Ed Ryan*

Edward P. Ryan
Attorney for Appellant

TUTUNJIAN & BITETTO, P.C.
425 Broadhollow Rd., Suite 302
Melville, NY 11747

CASE PARTICIPANTS ONLY

# ADDENDUM

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD

_____

*Ex parte* ALICIA BELLANDI

_____

Appeal 2011-004851
Application 12/173,586
Technology Center 3700

_____

Before EDWARD A. BROWN, MICHAEL L. HOELTER and
ANNETTE R. REIMERS, *Administrative Patent Judges*.

REIMERS, *Administrative Patent Judge*.

DECISION ON APPEAL

Appeal 2011-004851
Application 12/173,586

## STATEMENT OF THE CASE

Alicia Bellandi (Appellant) appeals under 35 U.S.C. § 134(a) from the Examiner's decision to reject under 35 U.S.C. § 103(a): (1) claims 1, 2, 4 and 9-11 as unpatentable over Curley (US 2009/0062076 A1, pub. Mar. 5, 2009); (2) claims 3, 12, 14, 18-20 and 22 as unpatentable over Curley and Schlosser (US 7,131,936 B2, iss. Nov. 7, 2006); (3) claims 5-7 and 13 as unpatentable over Curley and Wilkins (US 2007/0032353 A1, pub. Feb. 8, 2007); (4) claims 15 and 21 as unpatentable over Curley, Schlosser and Wilkins; and (5) claim 8 as unpatentable over Curley and Frazier (US 7,486,197 B1, iss. Feb. 3, 2009).[1]  Claims 16 and 17 have been canceled. We have jurisdiction over this appeal under 35 U.S.C. § 6(b).

We AFFIRM.


## THE INVENTION

Appellant's invention "relates to a mat for teaching specific gymnastic moves, for example, a cartwheel."  Spec., para. [0001]; figs. 1-2.

Claims 1 and 14 are illustrative of the claimed invention and read as follows:

> 1.    A standalone mat comprising:
>      a plurality of sequentially aligned sections each delineated for receiving one of a hand or foot of a user, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand; and

---

[1] The Examiner has withdrawn the rejection of claims 1-15 and 18-22 under 35 U.S.C. § 112, first paragraph, for failing to comply with the written description requirement.  Ans. 13.

Appeal 2011-004851
Application 12/173,586

at least one indicator in communication with each of said plurality of sequentially aligned sections and responsive to a user's hand and foot placement onto a respective section while performing a gymnastic movement, said indicator providing proper or improper indications in response to the user's performance of the gymnastic movement, including whether the hand or foot has been placed in the correct position within each of said plurality of sequentially aligned sections.

14.    A gymnastic mat comprising:
a plurality of linearly and sequentially arranged sections, wherein at least two adjacent center sections are designated for exclusively receiving hands, such that one center section receives a right hand and the other center section receives a left hand;
at least one sensor positioned in each of said plurality of sections;
an audio indicator having a sound corresponding to each of said plurality of sections, wherein proper sequential placement of the hands and feet during execution of a gymnastic move results in a predetermined sound sequence of the sound for each of the plurality of sections indicating proper sequential execution of the gymnastic movement; and
a power supply connected to said at least one sensor in each of said plurality of sections and said audio indicator.

## ANALYSIS

*Obviousness over Curley – Claims 1, 2, 4 and 9-11*

Appellant indicates that claims 2, 4 and 9-11 stand or fall with the rejection of independent claim 1. Br. 7. Accordingly, we review this ground of rejection on the basis of claim 1. *See* 37 C.F.R. § 41.37(c)(1)(vii) (2011).

Appellant argues that Curley fails to teach or suggest "a plurality of sequentially aligned sections . . . wherein at least two adjacent center sections are designated for exclusively receiving hands," as recited in claim 1. Br. 12 (emphasis omitted). Specifically, Appellant contends that with

3

Appeal 2011-004851
Application 12/173,586

respect to Curley, (1) "[t]he hand placement sections (i.e., items 120 and 125) are located on the outside of the mat. The foot placement stations (i.e., items 160 and 165) are located inside the hand placement stations, but they are not aligned with the hand placement stations;" (2) "the hand placement stations [i.e., 120 and 125] are not 'adjacent' to each other, and they cannot be considered 'center sections' since they are located on the periphery of the mat;" and (3) "sections 120, 125, 160 and 165 are [not] in sequential order given the relatively large gap and divider which lie between the foot placement sections [i.e., 160 and 165]." *Id.* at 12-13.

Appellant further argues that

> Although paragraph [0050] of Curley explains that the hand and foot placement stations can be varied, one of ordinary skill in the art would not arrive at the particular configuration of the mat recited in the present claims upon reading the disclosure of Curely. As explained in the present specification, the arrangement of Applicant's mat is particularly useful for executing gymnastics moves, and in particular, for ensuring the proper execution of a cartwheel. As such, the mat includes a plurality of sequentially aligned sections that includes two center sections which are reserved exclusively for receiving hands. However, since Curley's mat is designed to be used with yoga exercises, this reference fails to suggest or even remotely contemplate the specific arrangement of the mat recited in the present claims.

*Id.* at 13.

Claims are given their broadest reasonable interpretation consistent with the specification, reading claim language in light of the specification as it would be interpreted by one of ordinary skill in the art. *In re Am. Acad. of*

4

46

Appeal 2011-004851
Application 12/173,586

*Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). We note that Appellant's Specification does not expressly define the terms "sequential," "aligned" or "adjacent" or otherwise indicate that these terms are used in a manner other than their ordinary and customary meanings. We agree with the Examiner that under the broadest reasonable interpretation consistent with Appellant's Specification, Curley discloses a standalone mat including a plurality of sequentially aligned placement stations (i.e., 120, 160, 165, 125). Ans. 5, 13-16; Curley, figs. 1-2. We further agree with the Examiner that (1) Curley discloses "using the mat to perform any desired exercise such as a dance routine." *Id.* at 17 (citing Curley, para. [0050]); and (2) "broadly interpreted, [a] dance routine is considered a gymnastic movement." *Id.* We also agree with the Examiner's reasoning that

> Curley, in paragraph [0050], mentions that the hand and foot placement stations are removable and exchangeable and that number and location of the placement stations can be varied depending on the nature of the exercise for which the mat is used. Consequently, although Curley shows the two foot placement stations are in the middle in Fig. 1, Curley still teaches the fact that depending on the type of exercise (such as karate, yoga or dance routines) the placement of the stations can be varied and therefore, since the placement stations are removable and their location/arrangement can be changed, the device is capable of having the two [adjacent] hand placements at the center of the mat . . . . As a result, the device of Curley can have the [adjacent] hand placement stations in the middle [i.e., in the center section].

*Id.* at 15.

5

Appeal 2011-004851
Application 12/173,586

The Examiner's finding that Curley discloses a standalone mat including a plurality of sequentially aligned sections, wherein at least two adjacent center sections can be designated for exclusively receiving hands is supported by a preponderance of the evidence. Appellant has not provided any persuasive evidence of error regarding the Examiner's findings and conclusions regarding the disclosure of Curley.

Appellant also argues that Curley fails to teach or suggest "at least one indicator in communication with each of said plurality of sequentially aligned sections and responsive to a user's hand and foot placement onto a respective section while performing a gymnastic movement, said indicator providing proper or improper indications in response to the user's performance of the gymnastic movement," as required by claim 1. Br. 14 (emphasis omitted). Specifically, Appellant argues that

> although Curley does briefly mention that the mat therein may include audio sensor feedback, this reference fails to teach or suggest a mat wherein 'each' section is in communication with an indicator. Moreover, this reference further fails to teach or suggest that the indicator is responsive to a user's hand and foot placement 'while performing a gymnastics movement' or that the indicator provides proper or improper indications 'in response to the user's performance of the gymnastic movement.'

*Id.*

First, as correctly pointed out by the Examiner, "[t]he claim language as presented currently, only requires one indicator, wherein the indicator is in communication with each of the sections . . . not existence of an indicator in each of the sections." Ans. 17. While Appellant's Specification describes an embodiment including an indicator in each of the sections (Spec., para.

6

Appeal 2011-004851
Application 12/173,586

[00030]; fig. 3), we are not constrained to read any such direct connection into claim 1 when Appellant has chosen to claim the invention using broad language, which under the broadest reasonable interpretation, does not require an indicator in each of the sections. Here, Curley expressly teaches that the "mat of the invention can include an audio sensor feedback located on or in the hand and feet placement stations." Curley, para. [0051]. Accordingly, we agree with the Examiner that Curley discloses an audio sensor feedback (i.e., at least one indicator) in communication with each of the hand and foot placement stations (i.e., 120, 125, 160, 165). Ans. 17. Second, as discussed *supra*, we agree with the Examiner that "broadly interpreted, [a] dance routine is considered a gymnastic movement." *Id.* In addition, we agree with the Examiner's reasoning that

> in paragraph [0051], Curley mentions that when a participant depresses a placement station, the electronic audio recording sounds 'right foot' as an audio feedback response. As a result, when the user depresses a right hand on a right foot placement station, the audio feedback device produces the sound 'right foot'. As a result, the user would know that their hand placement was improper since the proper or correct placement of the right hand on the right hand placement station would produce a 'right hand' sound. As a result, based on the hand and foot placement on the placement stations, a corresponding sound is produced which is an indication to the user to see if a performance was correct or incorrect based on the hand and foot placement and the respective generated sound. Also as it can be seen from Fig. 1, the hand and foot placement stations look different (they are visually different). Accordingly, the shape of the placement stations can serve as an indication for the user which are responsive to the user's hand and foot placement

7

> and that the user would know that if the user's hand is on a foot placement station, the movement is being performed incorrectly and the movement is improper.

*Id.* at 17-18.

The Examiner's finding that Curley discloses at least one indicator in communication with each of the plurality of sequentially aligned sections and responsive to a user's hand and foot placement onto a respective section while performing a gymnastic movement, wherein the indicator provides proper or improper indications in response to the user's performance of the gymnastic movement is supported by a preponderance of the evidence. Appellant has not provided any persuasive evidence of error regarding the Examiner's findings and conclusions regarding the disclosure of Curley.

Accordingly, for the foregoing reasons, we sustain the rejection of independent claim 1 and of claims 2, 4 and 9-11, which fall with claim 1.

*Obviousness over Curley and Schlosser – Claims 3 and 12*

Appellant indicates that claims 3 and 12 stand or fall with the rejection of independent claim 1. Br. 7. For the reasons discussed *supra*, we sustain the rejection of independent claim 1. Accordingly, we likewise sustain the rejection of claims 3 and 12.

*Obviousness over Curley and Schlosser – Claims 14, 18-20 and 22*

Appellant indicates that claims 18-20 and 22 stand or fall with the rejection of independent claim 14. Br. 7. Accordingly, we review this ground of rejection on the basis of claim 14. *See* 37 C.F.R. § 41.37(c)(1)(vii) (2011).

Appellant indicates that independent claim 14 includes many of the same limitations as independent claim 1. Br. 17-18. In the interest of brevity, we will not repeat our response to Appellant's arguments regarding

these same limitations and will only address those arguments that differ from the arguments previously presented, which are addressed *supra*.

First, Appellant argues that "claim 14 recites that the sections of the mat are 'linearly' arranged . . . the sections of Curley's mat are not linearly arranged. Rather, the foot placement sections are situated beneath the hand placements on the mat." *Id.* at 18.

Regarding Appellant's first argument, the Examiner found that Curley discloses "linearly" arranged hand and foot placement sections, i.e., 120, 125, 160, 165. Ans. 7, 14, 18-19; Curley, figs. 1-2. The Examiner further pointed out that Curley discloses "rearrangement of the [hand and foot] placement stations [i.e., 120, 125, 160, 165] according to a desired exercise [i.e., a dance routine]." *Id.* at 19 (citing Curley, para. [0050]). The Examiner concluded that Curley discloses "this limitation [i.e., linearly arranged hand and foot placement sections] of . . . claim 14." *Id.* Appellant has not provided any persuasive evidence of error regarding the Examiner's findings and conclusions regarding the disclosure of Curley.

Second, Appellant argues that

> claim [14] further recites that the 'proper sequential placement of the hands and feet' during execution of a gymnastic move results in a predetermined sound sequence which indicates the 'proper sequential execution of the gymnastic movement'. Since the cited references also fail to teach or suggest these elements, claim 14 is believed to be patentable and non-obvious over the references for these additional reasons.

Br. 18.

Regarding Appellant's second argument, the Examiner found that Curley discloses a mat including an audio feedback sensor that is located in

Appeal 2011-004851
Application 12/173,586

or on the hand and foot placement stations and depression of a placement

station by the user, produces "a feedback/audio corresponding to that

section, such as 'right foot' when the user touches the right foot section."

Ans. 8; *see also id.* at 19; Curley, para. [0051]. The Examiner further

reasoned that

> as a result, the user would know if their hand or
> foot placement in any of the placement station is
> correct or proper based on the produced sound
> (please note that a dance routine is considered a
> gymnastic move. Since a dance routine involves a
> certain order in hand and foot placements, the
> sound that is generated for a correct routine is
> specific to that routine and it involves a
> predetermined sound sequence). For instance,
> when the user depresses a right hand on a right
> foot placement station (in performing a routine),
> the audio feedback device produces the sound
> 'right foot'. As a result, the user would know that
> their hand placement was improper since the
> proper or correct placement of the right hand on
> the right hand placement station would produce a
> 'right hand' sound. As a result, based on the hand
> and foot placement on the placement stations, a
> corresponding sound is produced which is an
> indication to the user to see if a performance was
> correct or incorrect based on the hand and foot
> placement and the respective generated sounds.

*Id.* at 19.

Appellant has not apprised us of error in the Examiner's findings and

conclusions regarding the disclosure of Curley. Appellant merely reiterates

a portion of what the disputed claim limitations recite and makes a general

allegation that neither Curley nor Schlosser disclose these limitations. Br.

18. Merely reciting the language of the claims and asserting that the cited

10

Appeal 2011-004851
Application 12/173,586

prior art references do not disclose each claim limitation is insufficient. *See* 37 C.F.R. § 41.37(c)(1)(vii) ("A statement which merely points out what a claim recites will not be considered an argument for separate patentability of the claim."); *see also In re Lovin*, 652 F.3d 1349, 1357 (Fed. Cir. 2011) ("we hold that the Board reasonably interpreted Rule 41.37 to require more substantive arguments in an appeal brief than a mere recitation of the claim elements and a naked assertion that the corresponding elements were not found in the prior art."); *cf. In re Baxter Travenol Labs.*, 952 F.2d 388, 391 (Fed. Cir. 1991) ("It is not the function of this court to examine the claims in greater detail than argued by an appellant, looking for [patentable] distinctions over the prior art.")). Consequently, Appellant's argument is unpersuasive.

Accordingly, for the foregoing reasons, we sustain the rejection of independent claim 14 and of claims 18-20 and 22, which fall with claim 14.

*Obviousness over Curley and Wilkins – Claims 5-7 and 13*

Appellant indicates that claims 5-7 and 13 stand or fall with the rejection of independent claim 1. Br. 7. For the reasons discussed *supra*, we sustain the rejection of independent claim 1. Accordingly, we likewise sustain the rejection of claims 5-7 and 13.

*Obviousness over Curley, Schlosser and Wilkins – Claims 15 and 21*

Appellant indicates that claims 15 and 21 stand or fall with the rejection of independent claim 14. Br. 7. For the reasons discussed *supra*, we sustain the rejection of independent claim 14. Accordingly, we also sustain the rejection of claims 15 and 21.

*Obviousness over Curley and Frazier – Claim 8*

Appellant indicates that claim 8 stands or falls with the rejection of independent claim 1. Br. 7. For the reasons discussed *supra*, we sustain the

11

Appeal 2011-004851
Application 12/173,586

rejection of independent claim 1. Accordingly, we likewise sustain the rejection of claim 8.

### DECISION

We AFFIRM the decision of the Examiner to reject claims 1-15 and 18-22.

No time period for taking any subsequent action in connection with this appeal may be extended under 37 C.F.R. § 1.136(a)(1)(iv).

### AFFIRMED

hh

12

## CERTIFICATE OF SERVICE

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

| Nov 22, 2013 |

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Edward P. Ryan | | /s/ Edward P. Ryan |

Name of Counsel                        Signature of Counsel

Law Firm   | Tutunjian & Bitetto, P.C. |

Address   | 425 Broadhollow Rd., Suite 302 |

City, State, ZIP   | Melville, NY 11747 |

Telephone Number   | (631) 844-0080 |

FAX Number   | (631) 844-0081 |

E-mail Address   | edr@tb-iplaw.com |

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

## CERTIFICATE OF COMPLIANCE

FORM 19. Certificate of Compliance With Rule 32(a)

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e).

☑     The brief contains [        5783        ] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

☐     The brief uses a monospaced typeface and contains [ state the number of ] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

☑     The brief has been prepared in a proportionally spaced typeface using [        Microsoft Word 2010        ] in [        14pt Times New Roman font        ], or

☐     The brief has been prepared in a monospaced typeface using [    state name and version of word processing program    ] with [    state number of characters per inch and name of type style    ].


<u>    /s/ Edward P. Ryan                              </u>
(Signature of Attorney)

Edward P. Ryan
<u>                                                                    </u>
(Name of Attorney)

Attorney for Appellant
<u>                                                                    </u>
(State whether representing appellant, appellee, etc.)

11/22/13
<u>                                                                    </u>
(Date)

Reset Fields